KLESTADT & WINTERS, LLP
292 Madison Avenue, 17th Floor
New York, NY 10017-6314
(212) 972-3000
Tracy L. Klestadt, Esq.

Proposed Attorneys for the Debtor
and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re

First Republic Group Realty, LLC,         Case No.

               Debtor.         Chapter 11

Debtor's Tax I.D. #: 26-0398352
------------------------------------------------------------x

## LOCAL RULE 1007-2 AFFIDAVIT

STATE OF NEW YORK   )
                              ) ss.:
COUNTY OF NEW YORK )

      Moses Stern a/k/a Mark Stern, being duly sworn, deposes and says:

      1.    I am the President and Chief Executive Officer of First Republic Group Realty, LLC (the "Debtor" or "FRGR"), the Debtor named in the above-captioned case.

      2.    I am authorized to submit this affidavit pursuant to Rule 1007-2 of the Local Bankruptcy Rules of this Court in support of the Debtor's petition for relief under chapter 11 of the Bankruptcy Code.

      3.    There are no other prior bankruptcy proceedings filed by or pending against the Debtor. However, on March 9, 2009, FRGR Managing Member LLC ("Managing Member"), the sole owner of the Debtor, filed for bankruptcy protection in this Court.

      4.    This case was not originally commenced under chapter 7 or 13 of the Bankruptcy Code.

      5.    As of the date hereof, the United States Trustee has not appointed an official committee of creditors. No committee was organized prior to the commencement of the case.

6. Unless otherwise indicated, the financial information contained herein is unaudited.

7. The Debtor, a Delaware Limited Liability Company, maintains an office at premises located at 30 East 29th Street, Suite 204, New York, NY 10016.

## Nature of Debtor's Business and Concise Statement of Circumstances Leading to the Debtor's Filing For Bankruptcy

8. On or about July 11, 2007, the Debtor acquired 11 shopping malls located throughout the Southeastern United States. The Debtor's business consists of the ownership and operation of these malls. A list of the shopping malls is attached as Exhibit A hereto.

9. That acquisition was partially financed by Citigroup Global Markets Realty Corp. ("Citigroup") in two "pieces," namely (a) a $111,150,000 Million loan from Citigroup to FRGR secured by first mortgages on the 11 shopping malls (the "Mortgage Loan") and (b) a $15 million loan to the Managing Member secured by all right, title and interest of the Managing Member's equity interest in FRGR (the "Mezzanine Loan") (collectively the "Loans").

10. The interest rate on the Loans is LIBOR based. Hence, from the inception of the Loans to date the interest rate on some $126 Million has steadily declined from approximately $800,000 per month to approximately $300,000 per month.

11. The loan documents provide for a "lock box" system of payment. All of the revenue is deposited into a lockbox controlled by Citigroup, which in turn is obligated to make ordinary and necessary disbursements relating to the operations of the malls, such as real estate taxes, cleaning services, security services, management services, etc.

12. From the inception of the Loans until the present time they have been fully performing on a financial basis. During 2008 "cash in" exceeded "cash out" by in excess of $3 Million after all expenses were paid, including all monies owed to Citigroup. The aggregate of the escrows now exceed $8 million.

13. Because of the unfavorable interest rate and its own economic distress, Citigroup "manufactured" three non-financial defaults and then proceeded to attempt to foreclose on its collateral.

14. By Notice Of Secured Party Sale At Public Auction and Notification Of Disposition Of Collateral, dated June 10, 2009, Citigroup intends to sell the equity interests in the Debtor at auction on Tuesday, June 23, 2009 at 10:30 a.m. (the "Auction"). The Debtor submits that the notice was improper.

15. The filing of the petition is intended to effectuate an injunction and stay of the sale so as to allow the Debtor to effectively reorganize its profitable business.

## **OTHER INFORMATION**

16. Pursuant to Bankruptcy Rule 1007 (d) and Local Bankruptcy Rule 1007-2 (a) (4), annexed hereto as Exhibit B is a list containing the names, addresses and claims of the 20 largest unsecured creditors excluding those persons who come within the definition of "insider" set forth in section 101(31) of the Bankruptcy Code and secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims.

17. Pursuant to Local Bankruptcy Rule 1007-2 (a) (5), annexed hereto as Exhibit C is a list containing the holders of the five largest secured claims against the Debtor.

18. Pursuant to Local Bankruptcy Rule 1007-2 (a) (6), the Debtor is required to file with this chapter 11 petition a summary of its estimated assets and liabilities. Annexed hereto as Exhibit D is a balance sheet as of December 30, 2008. The value set forth in the balance sheet with respect to the Properties is book value.

19. Pursuant to Local Bankruptcy Rule 1007-2 (a) (7), the Debtor is required to file with this chapter 11 petition a list setting forth the number and classes of shares of stock, debentures or other securities of the Debtor that are publicly held. None of the Debtor's stock is publicly held.

20. Pursuant to Local Bankruptcy Rule 1007-2 (a) (8), the Debtor is required to file with this chapter 11 petition a list of the Debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor or any agent for any such person. None of the Debtor's property is in the possession or custody of such persons.

21. Pursuant to Local Bankruptcy Rule 1007-2 (a) (9), the following is a list setting forth the premises owned, leased, or held under other arrangement from which the Debtor operates its business: The Debtor and the Managing Member, the Debtor's parent corporation, are located at 30 East 29th Street, Suite 204, New York, NY 10016.

22. Pursuant to Local Bankruptcy Rule 1007-2 (a) (10), the Debtor is required to set forth the location of its substantial assets, the location of its books and records, and the nature, location and value of any assets held outside the territorial limits of the United States. The Debtor's principal assets are the 11 shopping centers. A list of these shopping centers is attached as Exhibit A hereto. The Debtor's books and records are kept at Jones Lang La Salle, 3344 Peach Tree Road, NE, Suite 1200, Atlanta, GA 30326. None of the Debtor's assets are held outside the territorial limits of the United States.

23. Pursuant to Local Bankruptcy Rule 1007-2 (a) (11), the following is a list setting forth a description of the nature and present status of each action or proceeding pending or threatened against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

(a) *First Republic Group Realty LLC, et al V. Citigroup Global Markets Realty Corp.*, Index No. 601743/2008 (Supreme Court, New York County).

As set forth above, Citigroup is seeking to foreclose on its collateral based on three "manufactured" non-financial and immaterial defaults.

24. Pursuant to Local Bankruptcy Rule 1007-2 (a) (12), the following is a list of the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities.

(a) I formed the Managing Member and FRGR in contemplation of acquiring the 11 shopping malls from Colonial Properties Trust. I have considerable experience in the commercial real estate field.

(b) The daily operations of FRGR malls are managed by Jones Lang LaSalle, a highly regarded real estate management company. Decision regarding leases, capital expenditures, and anchor tenants are made by the Debtor. The fees of Jones Lang LaSalle are paid by Citigroup from the malls' cash flows.

(c) Alan Kaye is the principal property manager employed by the Debtor.

25. The Debtor intends to continue its business. Pursuant to Local Bankruptcy Rule 1007-2 (b) (1), the Debtor is required to set forth the estimated amount of the weekly payroll to employees of the Debtor (exclusive of officers, directors, stockholders and partners) for the 30-day period following the filing of the chapter 11 petition, net of payroll taxes. Such amount is approximately $37,500.00 per week.

26. Pursuant to Local Bankruptcy Rule 1007-2 (b) (2) (A), the Debtor is required to set forth the amounts proposed to be paid to the officers, directors and stockholders of the Debtor during the 30-day period following the filing of the chapter 11 petition, net of payroll taxes. Such amount is approximately $26,000 per month.

27. Annexed as Exhibit E is a schedule setting forth the Debtor's estimated cash receipts and disbursements, other than professional fees.

28. A certificate of the corporate resolutions of the Debtor authorizing the filing of its chapter 11 petition is annexed hereto as Exhibit F.

29. The Debtor is a non publicly-held company.

## Conclusion

30. The Debtor believes that, given the opportunity, it will be able to propose, confirm and consummate a plan of reorganization that will be in the best interests of its estate and all of its creditors.

_____
Mark Stern
President & Chief Executive Officer

Sworn to before me this
22nd day of June, 2009

_____
Notary Public

LAURA COLLINS
Notary Public, State of New York
No: 01CO6018661
Qualified in Nassau County
Commission Expires, 01/19/2011

NYIWDMS: 11127568_1